**Mark S. DeMarco**
Attorney At Law
100 Lafayette Street, Ste. 501
Bronx, New York 10465
718 239 7070
Fax 718-239-2141
MSDLaw@aol.com

April 27, 2026

Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**BY ECF & ELECTRONIC MAIL**

                                        Re:    *United States v. Michael Edwards*
                                               **23 Cr. 578 (JGK)**

Your Honor:

## Introduction

Michael Edwards is a model inmate. Since being remanded by this Court on August 9, 2024, he has incurred no disciplinary infractions and has completed more than 200 educational courses. **See Defendant's Exhibit A, Transcript & Program Certificates.**

In or about June 2025, he started working in the jail's kitchen unit, a job reserved for only the most responsible and trustworthy inmates. As his supervisor writes:

> Inmate Edwards comes to work without missing a day. He has
> been working in the kitchen for 9 months. Inmate Edwards gives
> staff respect and always offers to help whenever the staff needs his
> assistance. Inmate Edwards never had any incidents while
> working in the kitchen detail. I recommend him for any future
> work.

**See Defendant's Exhibit B, Work Evaluation dated March 16, 2026 & Outstanding Work Performance Certificate.**

Since his arrest and detention, Michael's rehabilitative efforts have been impressive. Not only is he determined to leave his former life behind him, but his completion of numerous courses and programs and his position as a valued kitchen worker demonstrate a level of dedication and determination. Mr. Edwards has used his incarceration thus far to better himself and others through extensive investment in the rehabilitative programming available to him. He

1

Hon. John G. Koeltl
April 27, 2026

has also has assisted the correction officers and has helped to feed his fellow inmates.

Although a relatively young man, Michael is battling several serious health issues ███████. ████████████████████████████████████████████████████ ███████████████. Clearly, a significant prison sentence could result in a potentially fatal catastrophe. Michael has already paid a heavy price for his mistakes, both financially and personally.

Most importantly, however, Michael, who is scheduled for sentencing by this Court on May 11, 2026, is remorseful for his conduct that has brought him before this Court. Michael Edwards is a good man who is guilty of serious crimes. The sentencing guidelines, however, do not take into account his educational transformation and already-extensive rehabilitation which simply buttress his remorse and this letter is submitted to provide information to assist this Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by *18 U.S.C. § 3553(a)* in light of *United States v. Booker*, 543 U.S. 220 (2005).

## Objections to the Presentence Report ("PSR")

### Loss Amount Enhancement

According to the Presentence Investigation Report ("PSR") prepared by the United States Probation Office, Mr. Edward's adjusted offense level was calculated to be in excess of guideline offense level 43, which, when combined with his criminal history category of II, provides an applicable sentence of 1,020 months followed by a mandatory consecutive term of imprisonment of 24 months. In so doing, Probation improperly applied a 22 level Guidelines enhancement pursuant to § 2B1.1(b)(1)(1)(L), concluding that he intended to cause loss in excess of 57-million-dollars. *PSR ¶ 57.* Mr. Edwards objects to the loss amount enhancement.

At the outset, In considering the weight to be afforded to the Sentencing Guidelines in a particular case, the Supreme Court recognized that not all guidelines are equal: while some "exemplify the Commission's exercise of its characteristic institutional role," others do not. *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (2007). In cases involving application of Guidelines that "do not exemplify the Commission's exercise of its characteristic institutional role," it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that the application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Id.* In *Rita v. United States*, 551 U.S. 338 (2007), the Court reasoned that if a particular guideline was originally based on past sentencing practices and revised in response to sentencing data and other research, then it seemed fair to assume that the recommendations truly embodied the statutory goals of §3553(a). *Id.* at 349. Conversely, when a guideline was not developed according to this practice, there was less reason to believe that it embodied the statutory objectives and deserved deference, even in a mine-run case. *Kimbrough,* 552 U.S. at 109.

Hon. John G. Koeltl
April 27, 2026

Section §2B1.1 is a prime example of a Guideline that is not based on historical sentencing practices or research, rather is singularly focused on the overall loss amount, which is a poor measure of culpability. For this reason, the Second Circuit has invited District Courts to consider non-Guidelines sentences in fraud cases. *See United States v. Algahaim*, 842 F.3d 796, 800 (2d Cir. 2016)("Where the Commission has assigned a rather low base offense level to a crime and then increased it significantly by a loss enhancement, that combination of circumstances entitles a sentencing judge to consider a non-Guidelines sentence."); *United States v. Corsey*, 723 F.3d 366, 379 (2d Cir. 2013) (Underhill, J., concurring) ("The loss guideline . . . was not developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices. As such, district judges can and should exercise their discretion when deciding whether or not to follow the sentencing advice that guideline provides."); *see also United States v. Gupta*, 904 F. Supp. 2d 349 (S.D.N.Y. 2012) (Rakoff, J.) (describing how the fraud Guideline effectively ignores everything but loss amount and that many of the resulting Guidelines-recommended sentences are "irrational on their face").

As Judge Rakoff noted in *Gupta*, "[t]he numbers assigned by the Sentencing Commission to various sentencing factors appear to be more the product of speculation, whim or abstract number-crunching than any rigorous methodology – thus maximizing the risk of injustice." *United States v. Gupta*, 904 F. Supp.2d 349, 350-51 (S.D.N.Y. 2012). Similarly, in *United States v. Adelson*, 441 F. Supp.2d 506, 512 (S.D.N.Y. 2006), where the defendant was 00faced with a guideline sentence of 85 years, Judge Rakoff remarked on "the utter travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic, as well as the harm that guidelines calculations can visit on human beings if not cabined by common sense." In both cases, Judge Rakoff imposed a sentence substantially below the guidelines range.

Further, as Judge Frederic Block of the Eastern District of New York stated in one securities fraud case, "[I]f not for the wisdom of the Supreme Court in recognizing the need to free district courts from the shackles of the mandatory guidelines regime, I would have been confronted with the prospect of having to impose what I believe any rational jurist would consider to be a draconian sentence." *United States v. Parris*, 573 F. Supp.2d 744, 750-51 (E.D.N.Y. 2008).

Indeed, Guideline Section 2B1.1 routinely recommends arbitrary, disproportionate, and often draconian sentences to first-time offenders of economic crimes. These disproportionate sentences are driven primarily by Section 2B1.1's loss table, which has an outsized role in determining the length of an economic crime offender's sentence. This deep flaw in the Guideline's design has led many judges to lose confidence entirely in its recommended sentences, leading to a wide disparity of sentences issued to similarly situated economic crime offenders across the country. Accordingly, this Guideline has failed to address the primary problem it was designed to solve – unwarranted disparities among similarly situated offenders. Worse still, it not only has failed to prevent such unwarranted disparities, its underlying design actively exacerbates them.

As of November 1, 2024, U.S.S.G. § 2B1.1(b)(1), Note (A), now provides that "[l]oss is

Hon. John G. Koeltl
April 26, 2026

the greater of actual loss or intended loss" and Note (C)(ii) further defines "Intended loss" to "(I) mean[] the pecuniary harm that the defendant purposely sought to inflict; and (II) include[] intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)."

In this case, Michael Edwards never intended to cause loss in excess of $57 million.  Nor was that amount reasonably foreseeable and, therefore, Probation's conclusion is speculative and not grounded in evidence.

**Application of the Section *3553(a)* Factors Calls for a**
**Sentence of 60 Months' Imprisonment**

### *18 U.S.C. § 3553(a)* **Factors**

Pursuant to the Supreme Court's decision in *United States v. Booker*, the Guidelines are advisory; a sentencing court may depart in the interest of justice as well as in light of other statutory concerns as expressed in section 3553(a). *United States v. Booker*, 543 U.S. 220, 245-46, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005); see also *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) ("It is now, however, emphatically clear that the Guidelines are guidelines — that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense.").

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." *18 U.S.C. § 3553(c)*.  If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in section *3553(a)(4)* of title 18, the court shall indicate the specific reasons for imposing a different sentence. See *18 U.S.C. § 3553(c)(2)*. These "reasons must also be stated with specificity in a statement of reasons form." Id.  Even though the Guidelines are now advisory rather than mandatory,[*Booker*, 543 U.S. at 245-46], the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006). The sentencing court's written statement of reasons shall be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under *§ 3553(a)*." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006), abrogated in part on other grounds by *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007). The statement should demonstrate that the court "'considered the parties' arguments' and that it has a `reasoned basis for exercising [its] own legal decision making authority.'" *Cavera*, 550 F.3d at 193 (quoting *Rita v. United States*, 551 U.S. 338, 356, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007)).

In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society, and our economy, parsimony in incarceration is prized. See, e.g., *18 U.S.C. § 3553(a)* ("The court shall impose a sentence sufficient, but not greater than necessary."); National Research Council of the National

Hon. John G. Koeltl
April 27, 2026

Academies, The Growth of Incarceration in the United States, Exploring Causes and Consequences, 8 (2014) ("Parsimony: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.").

Accordingly, a court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of the Guidelines. *18 U.S.C. § 3553(a)*. The Guidelines range is the "starting point and the initial benchmark." *United States v. Johnson, 567 F.3d 40, 51 (2d Cir. 2009) (quoting Gall v. United States, 552 U.S. 38 (2007))*. "A district court is authorized to depart from a Guidelines range if the court finds that 'there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *United States v. Juvenile Male Po, 466 Fed. Appx. 14, 15 (2d Cir. 2012) (summary order) (citing 18 U.S.C. § 3553(b))*.

## The Sentencing Factors As Applied to Michael Edwards

*18 U.S.C. § 3553(a),* and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), outline the task facing district courts in considering the guidelines. The court must determine the applicable guidelines range, and further consider applicable policy statements. After thus considering the guidelines, the Court must consider all the other factors set forth in *§ 3553(a)* before determining whether (i) to impose the sentence that would have been imposed under the guidelines, i.e. a sentence within the applicable guideline range or within permissible departure authority, or (ii) to impose a non-guideline sentence.

## Personal Characteristics

Michael Edwards was born in New York City in 1995. He is a life-long resident of the New York tri-state area and was raised in a lower-middle-class home by his mother, who worked hard and sacrificed for her children. Although largely absent from the lives of his children and living in Jamaica, his father occasionally wired money to help support his children. This support stopped when Michael was nine-years old and his father married another woman.

Michael has two full siblings, brothers Dwayne (age 27) and Gregory (age 24) and two maternal half-siblings, sisters Katarina Henry (age 17) and Krisian Henry (age 14). Since his father was barely involved in their lives, Michael assumed a paternal role for his brothers. Michael's siblings are aware of his conviction here and remain supportive.

### Michael is Adored by His Younger Sisters

Katarina, who is training to become a Certified Nursing Assistant, writes:

> I feel like I know my brother very well just based on growing up
> with him and him being more like a father figure to me and our
> little sister more than a brother. He has helped me with

Hon. John G. Koeltl
April 27, 2026

> everything like homework, life choices, and so much more that
> others probably don't get from their older sibling. Michael to me
> and our little sister is like a 2nd father figure to us, when we
> needed clothes, food, money for our birthdays, help with
> homework, taking us to carnivals for the summer, he was always
> there to give us anything and be patient and kind to us.
>
> **\* \* \* \***
>
> He is the most generous and caring person I've known/seen, I
> remember a specific time where he would buy us groceries for the
> house when we didn't have any. He rescued a puppy and gave her
> to us because we've always wanted a pet. The puppy always cries
> when she sees him because she loves him. I remember when a
> homeless guy asked for money when he was at a stop light
> and he gave the homeless guy money to get something to eat. I
> believe he is someone to rely on.

**See Defendant's Exhibit B, Letters from Katarina and Krisian Henry.**

Similarly, Krisian, who is currently in high school, describes Michael as "a best friend and father figure," who is always available for advice and support. She further writes:

> He is hardworking and chooses peace instead of any negativity and
> always tries to solve a problem with positivity. Michael often puts
> others before himself which may be bad but it shows how selfless
> he is. There have been times when Michael went out of his way
> and gave money to the people in need. He also has helped when I
> was struggling to do my hair for school and driving my sister and I
> to school. Even though Michael has made mistakes in life it does
> not define him as a person which I hope you can see and give him
> another chance to prove himself.

*Ltr of Krisian Henry*.

### Michael's Children and Personal Relationships

Michael has been dating Desaray Grant for roughly 15 years.  They share a good relationship and she remains supportive of Michael.  Together, the have two children, Jalyena (age 9) and Khalissi (age 1), who was born during Michael's current incarceration.  Ms. Grant describes Michael as a "good man that does everything he can to provide for his family at home and his mother's household." *PSR ¶ 91*.  Indeed, despite Michael's difficult upbringing, he has grown to become a loving and supportive father.

6

Hon. John G. Koeltl
April 27, 2026

### Michael's Educational & Employment History

Michael earned his high school diploma from John V. Lindsay Wildcat Academy Charter High School and he has a work history dating back to 2017.

Prior to establishing a car rental company in 2024, he has held jobs in automotive maintenance for several months in 2023; as a Rite-Aid cashier for 18 months; as a security guard for roughly one-year; as a flag man for a construction company; as a cashier at a check cashing service for about one year, and; delivering meals to the elderly for several months.

While in high school, he worked in a warehouse for a few months and as an electrician's helper for several months.

While it is true that Mr. Edwards's criminal conduct may pose concerns for this Court, his employment history and prison record discussed above suggests otherwise.

### Michael's Physical Health

As detailed in the Presentence Investigation Report ("PSR") and as discussed briefly above, Mr. Edwards has several medical concerns worth noting.

The Sentencing Reform Act provides that the Sentencing Commission "shall consider whether" various factors, including a defendant's physical condition, "have any relevance" to the "imposition of [a] sentence[] of . . . imprisonment," and that it "shall take th[ose factors] into account only to the extent that they do have relevance." *28 U.S.C. § 994(d)(5); see United States v. Cutler, 520 F.3d 136 (2d. Cir. 2008).*

Further, the Guidelines provide that "physical condition . . . is not *ordinarily* relevant in determining whether a sentence should be outside the applicable guideline range." *U.S.S.G. § 5H1.4* (emphasis added). However, as with other such "discouraged" grounds for departure, a departure is permitted for physical impairment where such a factor is present "to an exceptional degree." *United States v. Koon, 518 U.S. 81, 95-96 (1996).* Indeed, *§ 5H1.4* expressly recognizes that "an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range and states that a defendant's "[p]hysical condition . . . is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline

---

[1] Mr. Edwards's medical records have been obtained from the Essex County Correctional Facility. They have been provided to Probation and are available for review by this Court and the Government, upon request.

Hon. John G. Koeltl
April 27, 2026

range," *Guidelines § 5H1.4* (Policy Statement).  It is often relevant, though not always controlling, whether the United States Bureau of Prisons ("BOP") can provide adequate care. *See United States v. Jimenez, 212 F.Supp 2d 214 (S.D.N.Y. 2002)*.

This case is truly extraordinary.  Mr. Edwards's incarceration would be far more difficult than that of a younger and healthier person.  In order to successfully cope with his various medical issues, he must see a doctor on a  regular basis and despite federal authorities' concern for prisoners' welfare, an extended period of incarceration is likely to be detrimental to his health, resulting in a lessening of his present life expectancy.  Indeed, given his various medical issues, a sentence of incarceration, for all practical purposes, will result in a harsh sentence.

It is important to note that Mr. Edwards's present health concerns are not relatively easily-controllable medical conditions.  Accordingly, as *§ 5H1.4* teaches, this is a case where imprisonment, which would otherwise be justified to protect the public, is wasteful and unnecessary.   Beyond question, some portion of the prison sentence recommended by the Guidelines in this case is based on rationales of incapacitation and special deterrence.   These rationales are inapplicable here since Mr. Edwards is radically less likely to commit further crimes than the typical person and, accordingly, a sentence of imprisonment is inappropriate.

**A Sentence Below the Guideline Range Of Imprisonment**
**Would Serve the Goals of Specific and General Deterrence**

A below-guidelines sentence would also serve the goals of specific and general deterrence.

### Specific Deterrence

First, as to specific deterrence, Mr. Edwards has already suffered greatly as the result of his conduct. There is no possibility that Mr. Edwards, after having endured this indictment and incarceration, would ever be involved in similar conduct. Mr. Edwards was not present for the birth of his daughter and he has been left destitute as a result of this prosecution.

### General Deterrence

General deterrence would also be served by a such a sentence. The prosecution of Mr. Edwards has resulted in the destruction of his business and financial ruin. These consequences send a strong message of deterrence to any observer.

### Conclusion

Michael Edwards is a good man who is remorseful for his actions that have brought him before this Court.   He is also 30 years old and suffering from various medical issues.  He has already paid a heavy price for his mistakes.

Hon. John G. Koeltl
April 27, 2026

   Accordingly, for the reasons set forth above – the extraordinary facts and circumstances of this case and the extraordinary characteristics of the defendant – it is respectfully requested that this Court adopt a below-guidelines sentence and impose a sentence of 60 months' imprisonment.. Such a sentence would take into effect the guidelines analysis and all of the sentencing factors of *18 U.S.C. § 3553*.

   Thank you for your attention to this matter.


         Respectfully submitted,

         *Mark S. DeMarco*

         Mark S. DeMarco
         Attorney for Michael Edwards

cc:  Jerry Fang, Esq.
   William Stone, Esq.
   Assistant United States Attorneys
   By ECF & Electronic Mail