**Mark S. DeMarco**
Attorney At Law
100 Lafayette Street, Ste. 501
New York, New York 10013
718 239 7070
Fax 718-239-2141
MSDLaw@aol.com

August 31, 2026

Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**BY ECF & ELECTRONIC MAIL**

**Re: *United States v. Michael Edwards***
**23 Cr. 578 (JGK)**

Your Honor:

**Introduction**

This letter is submitted in opposition to the government's unsupported calculations for restitution and forfeiture in the amount of $18,840,084.45. See Gov. Ltr., Aug. 3, 2026, ECF Doc. 224. Indeed, the government's proposed forfeiture and restitution money calculations are each inflated based on unreliable methodology – an untrustworthy and speculative analysis of banking transaction images discovered in several locations, including a Telegram channel and the defendant's cellphones.

**The Government's Restitution Request is Plagued by Speculation**

The government seeks $18,840,084.45 in restitution. That is ostensibly based on the government's flawed and speculative calculations stated above. Those calculations, however, employ flawed assumptions. There is no evidence that large swathes of the checks, deposit slips, and transactions captured on cellphone screenshots and other electronic devices were legitimate check cashing activity at all; and thus there is no evidence that those funds were the subject of financial loss. Restitution cannot be supported by mere assumptions.

As the Second Circuit recently explained in *United States v. James*, 151 F.4th 28, 47 (2d Cir. 2025):

> Under the MVRA, restitution may be awarded only
> in the amount of losses directly and proximately

> caused by the defendant's conduct. While a restitution amount need not be mathematically precise and a reasonable approximation will suffice, especially in cases in which an exact dollar amount is inherently incalculable, the approximation must be supported by a sound methodology. A failure at least to approximate the amount of the loss caused by the fraud without even considering other legitimate factors that may be relevant to calculating restitution requires a remand to redetermine the amount of the loss.

*James*, 151 F.4th at 49 (*quoting United States v. Gushlak*, 728 F.3d 184, 194–96 (2d Cir. 2013) (emphasis in original); *United States v. Rutkoske*, 506 F.3d 170, 180 (2d Cir. 2007)) (quotation marks and modifications omitted).

Thus, in *James*, the Second Circuit vacated the restitution award because the "[t]he District Court's methodology for calculating restitution failed to separate legitimate from fraudulent revenue." *Id*. The offenses in *James* comprised fraudulent health insurance billings based on patient impersonations, and a certain health insurance coding modifier. While not all of the billings under the patients who were, at times, impersonated were fraudulent (the patients sought real care too), and while not all of the billings using the modifier at issue were necessarily fraudulent, the court nonetheless ordered restitution for the entirety of those billings – at the government's behest.

In vacating the restitution award, the Second Circuit emphasized that "[w]hile [restitution] calculations need not be mathematically precise, a reasonably approximated restitution amount must still be supported by a sound methodology." *Id*. at 50 (emphasis added). In *James*, the district court's was not. Because the district court's calculation failed to employ a methodology to reliably separate out legitimate from tainted transactions, the Second Circuit had little confidence in the requisite causal link between the offense conduct and the restitution amount. The defective methodology doomed the restitution award in *James*.

The same is true here. The $18,840,084.45 million that the government now asserts is the alleged arising from the offense conduct. The government's restitution request is pure assumption and speculation. Because the MVRA only authorizes courts to order restitution for actual, provable losses suffered by the victim, courts may not order restitution for losses that are unsubstantiated or speculative. *See United States v. Cienfuegos*, 462 F.3d 1160, 1168-69 (9th Cir. 2006). Nor should courts order restitution if "the number of identifiable victims is so large as to make restitution impracticable," 18 U.S.C. § 3663A(c)(3)(A), or if "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process," such that the burden on the sentencing process outweighs the need to provide restitution, id. § 3663A(c)(3)(B).

The government has not met its burden of proving actual loss to any victim. Nor has the government identified any victim or the specific losses attributable to them. The MVRA "limits the order of restitution to the sum of losses to identifiable victims." *United States v. Grimes*, 173 F.3d 634, 640 (7th Cir. 1999) (emphasis added). Thus, courts have found that district judges erred where they ordered restitution to "unidentified" victims. *Id*. at 639-40; *see also United States v. Catoggio*, 326 F.3d 323, 328 (2d Cir. 2003); *United States v. Zakhary*, 357 F.3d 186, 191 (2d Cir. 2004) ("Under these circumstances [where 'no . . . identification of victims or determination of their losses was made'], we are obliged to vacate that part of the judgment of conviction ordering restitution."). The government bears the burden of establishing actual loss to identifiable victims. Its inability to do so years after obtaining the evidence on which it now seeks to rely, prevents this Court from ordering restitution to victims other than those identified as suffering actual losses. Thus, no restitution should be ordered. Restitution built on nothing more than government guesswork is far from the “sound methodology” James requires.

**The Government’s Request for a Forfeiture Money Judgment is Similarly <u>Unsupported by the Evidence</u>**

The government’s request for a forfeiture money judgment fares no better since its methodology remains flawed, assuming that vast swaths of images of checks, deposits and deposit clips were actually confirmed and honored and realized by the defendant or one of his co-conspirators.

The Second Circuit’s decision in *James* provides a warning against predicating forfeiture on assumptions, as the government requests. James was a healthcare fraud case in which the Second Circuit vacated a forfeiture award that did not employ a reliable methodology to identify and include only the quantum of tainted funds. In *James*, while some of the defendant’s funds were legitimate, the court nonetheless ordered forfeiture without actually calculating the percentage of claims and transactions were “tainted by fraud.” *James*, 151 F.4th at 48. Because “[a]ny forfeiture order must be tailored to ill-gotten gains, [w]ithout an adequate justification for the forfeiture amount and in light of the evidence justifying a much lower amount of gain traceable to James’s fraud,” the Second Circuit vacated the forfeiture order. *Id*. (quotation marks and citations omitted).

A $18,840,084.45 forfeiture, predicated on the government’s less than thorough analysis, would repeat precisely the mistakes that warranted reversal in *James*. The government’s analysis is speculative and over-inclusive. As the Second Circuit emphasized in *James*, a more reliable analytical methodology is required; mere assumptions cannot predicate a forfeiture judgment.

Accordingly, based on the above, this Court should reject the Government’s restitution and forfeiture calculations and deny its motions in their entirety.

Thank you for your attention to this matter.

Respectfully submitted,

*Mark S. DeMarco*

Mark S. DeMarco
Attorney for Michael Edwards

cc: Jerry Fang, Esq.
William Stone, Esq.
Assistant United States Attorneys
By ECF & Electronic Mail